UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN THE MATTER OF THE
COMPLAINT OF JAMES ROBERT
BOSTWICK, AS OWNER, and
ARISTAKAT CHARTERS, LLC,
AS OWNER PRO HAC VICE, OF
A 2002 PROKAT 2860 MOTOR
VESSEL, HIN # WJIP0084E202,
FLORIDA VESSEL REGISTRATION
NUMBER 85944065,
FOR EXONERATION FROM OR
LIMITATION OF LIABILITY,          Case No. 8:24-cv-2708-VMC-SPF

_____/

## ORDER

Before the Court is Respondent/Claimant Nicholas David Wells's "Motion for Order Modifying Injunction and Incorporated Stipulation," filed on December 19, 2025. (Doc. # 45). Pursuant to Beiswenger Enterprises Corp. v. Carletta, 86 F. 3d 1032 (11th Cir. 1996), the Motion seeks to modify this Court's injunction (Doc. # 15), such that Claimant Wells may pursue his claim in state court. (Doc. # 45 at 9-10). Limitation Plaintiffs/Petitioners James Robert Bostwick and Aristakat Charters, LLC, responded in opposition on January 2, 2026. (Doc. # 46). With the Court's leave (Doc. # 48), Claimant Wells replied on January 28, 2026. (Doc. # 52). For the reasons set forth below, the Motion is denied.

1

## I.    Background

Petitioners are the owners of a 2002 ProKat 2860 Motor Vessel bearing HIN# WJIP0084E202 (the "Vessel"), which was involved in at least two maritime incidents on or about May 24, 2024 (the "May Incident"), and November 2, 2024 (the "November Incident"), while the Vessel was in the navigable waters of the United States, namely, in Venice, Sarasota County, Florida. (Doc. # 1 at 2). The May Incident occurred when Claimant Wells sustained an injury to both legs. (Id.). Around May 29, 2024, Petitioners received a "Notice of Claim" from Claimant Wells. (Id.). The November Incident occurred when a passenger, Raymond Berard, passed away after a scuba diving excursion. (Id.). Petitioners state that no Notice of Claim has been received pertaining to the November Incident. (Id.).

On November 20, 2024, Petitioners filed their "Complaint for Exoneration from or Limitation of Liability." (Id.). Petitioners seek to limit, if not eliminate altogether, their exposure to liability arising from the May and November Incidents, pursuant to the Limitation of Liability Act, 46 U.S.C. §§ 30501–30512, and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Supplemental Rule F"). (Id. at 4-5).

2

On November 21, 2024, Petitioners submitted an "Ad Interim Stipulation of Value" (Doc. # 6), as security for any claims stemming from the May and November Incidents. Petitioners represented that the post-accident value of the Vessel is $39,500. (Id. at 2; Doc. # 6-1). Based on this representation, Petitioners requested the Court to (1) approve the security of $39,500; (2) issue a monition to all potential claimants; and (3) impose an injunction, under Supplemental Rule F, on the further prosecution of any proceedings against Petitioners arising from any claims subject to limitation. (Doc. # 7).

On January 15, 2025, the Court granted Petitioners' request. (Doc. # 15). The Court approved the security and directed the Clerk of Court to issue a monition requiring any potential claimants to file their Rule F(5) claims by April 7, 2025. (Id. at 3-4). The Court also entered the injunction:

> The commencement or further prosecution of any action or proceeding against the Petitioners, the Vessel, or other property of the Petitioners with respect to any claims for which the Petitioners seek exoneration from or limitation of liability herein, including any claim arising out of or incident to or connected with any loss, damage, injury, death, or destruction, more fully described in the complaint, be and the same is hereby restrained, stayed, and enjoined until the hearing and determination of this action.

3

(Id. at 5). On January 17, 2025, the Clerk of Court entered a monition for potential claimants to submit claims by April 7, 2025. (Doc. # 17).

On April 6, 2025, Claimant Wells answered the complaint and filed his Rule F(5) claim against Petitioners. (Doc. ## 21, 22). In his claim, Claimant Wells seeks damages for his injuries from the May Incident that allegedly arise out of Petitioners' negligence. (Doc. # 22). Claimant Wells alleges:

> 5. On or about May 25, 2024, Petitioner's captain, Charles Edward Presnell, III, was operating the at issue vessel. Respondent/Claimant was in the water at the conclusion of his dive and attempting to reboard the vessel via the dive ladder.
>
> 6. At approximately 10:25 a.m. Respondent/Claimant was attempting to ascend the vessel's dive ladder when he was struck by Petitioner's propeller attached to Petitioner's outboard motor — which caused Wells to suffer severe lacerations to both of his legs.
>
> 7. As a direct and proximate result of the defects in Petitioner's vessel, and the negligence of Petitioner, its officers, employees, agents, contractors, designees, assignees, captain, crewpersons, etc., Respondent/Claimant suffered injuries.

(Id. at 2-3). Claimant Wells further stated that he "reserves the right to present his claim for damages in the forum of his choice upon the Court denying Petitioner's Complaint for Exoneration and/or Limitation of Liability." (Id. at 7).

4

On April 16, 2025, Petitioners answered Claimant Wells's Rule F(5) claim. (Doc. # 24). Petitioners admit that "there was a dive excursion on or about May 25, 2024" and that Claimant Wells was "in the water at the conclusion of his dive and attempting to reboard the vessel." (Id. at 1). Petitioners deny all the other allegations in Claimant Wells's Rule F(5) claim. (Id.). Further, Petitioners raise several affirmative defenses, including that the Vessel was operated and navigated with reasonable care, that the Vessel was seaworthy, that they lacked privity or knowledge of the accident, that Claimant was comparatively at fault, and that the incident was caused by other third parties or superseding causes. (Id. at 2-3).

On June 20, 2025, Petitioners filed two motions for entry of Clerk's default against (1) Tammy Cates Berard, personal representative of the Estate of Raymond Berard, and (2) all other non-responding claimants, due to their failure to file a Rule F(5) claim by the monition's April 7, 2025 deadline. (Doc. ## 34, 35). On June 23, 2025, the Clerk entered default accordingly. (Doc. ## 36, 37). On July 21, 2025, Petitioners moved for final default judgment against the Estate of Raymond Arthur Berard and all other non-responding claimants. (Doc. ## 39, 40). The Court denied the motions without prejudice

5

because "the Court's practice is to wait to grant default judgment until all pending claims have been resolved." (Doc. # 41).

## II. **Legal Standards**

A "district court's decision to stay a limitation action arising under the Limitation Act and to modify a related injunction" is reviewed "for abuse of discretion." Offshore of the Palm Beaches, Inc. v. Lynch, 741 F.3d 1251, 1257 (11th Cir. 2014) (citing Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 440 (2001), and Garrido v. Dudek, 731 F.3d 1152, 1158 (11th Cir. 2013)). "The party seeking to modify the injunction bears the burden of showing that modification is warranted." In re Anchorage Yacht Basin, Inc., No. 6:24-cv-1305-JSS-DCI, 2024 WL 5186883, at *2 (M.D. Fla. Dec. 20, 2024) (citations omitted).

## III. **Analysis**

### A. **Limitation of Liability and Saving-to-Suitors**

"Article III, § 2 of the United States Constitution vests federal courts with jurisdiction over all cases of admiralty and maritime jurisdiction." Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 443 (2001); see also 28 U.S.C. § 1333 (granting exclusive original jurisdiction to federal courts over admiralty and maritime cases). When a maritime incident

6

occurs, the Limitation of Liability Act allows a vessel owner to limit its liability exposure to the vessel's value if the incident occurred "without the privity or knowledge of the owner." See 46 U.S.C. § 30505. Under the Limitation of Liability Act, federal courts have "exclusive admiralty jurisdiction to determine whether the vessel owner is entitled to limited liability." Offshore of the Palm Beaches, Inc. v. Lynch, 741 F.3d 1251, 1257 (11th Cir. 2014) (citing Beiswenger, 86 F.3d at 1037). "In limitation proceedings, as in all admiralty cases, there is no right to a jury trial." Beiswenger, 86 F.3d at 1037.

This exclusive admiralty jurisdiction must be reconciled with the "saving-to-suitors" clause of 28 U.S.C. § 1333, which preserves to claimants "all other remedies to which they are otherwise entitled." Beiswenger, 86 F.3d at 1037. The saving-to-suitors clause "embodies a presumption in favor of jury trials and common law remedies in the forum of the claimant's choice." Id. Thus, the court's exclusive jurisdiction over admiralty matters is in tension with the saving-to-suitors clause's deference to the claimant's choice of forum. Id.; see also Lewis, 531 U.S. at 448 ("Some tension exists between the saving to suitors clause and the Limitation Act. One statute gives suitors the right to a choice of remedies, and

the other statute gives vessel owners the right to seek limitation of liability in federal court.").

"Courts have attempted to give effect to both the Limitation Act and the saving to suitors clause whenever possible, by identifying two sets of circumstances under which the damage claimants must be allowed to try liability and damages issues in a forum of their own choosing." Beiswenger, 86 F.3d at 1037. "The first circumstance arises where the limitation fund exceeds the aggregate amount of all the possible claims" against the boat's owner. Id. "The second circumstance exists where there is only one claimant." Id.

"In a single claimant case, the district court may, at its discretion, order a stay of the limitation action to allow the claim to be tried in another forum." Lynch, 741 F.3d 1251, 1258. "Before a stay may issue, however, the claimant must enter a series of stipulations that 'effectively guarantee that the vessel owner will not be exposed to competing judgments in excess of the limitation fund.'" Id. (quoting Beiswenger, 86 F.3d at 1038).

B. **The Motion, Response, and Reply**

In his Motion, Claimant Wells states that he "is a single claimant in this Limitation action" and makes several stipulations pursuant to Beiswenger. (Doc. # 45 at 2-4).

8

Pursuant to these stipulations, Claimant Wells argues that he is entitled to bring an action in the forum of his choosing, and asks the Court to "relinquish jurisdiction to allow [him] to pursue this civil action in State court." (Id. at 10).

In opposition, Petitioners argue that "[t]his is not a single claimant case in the typical sense." (Doc. # 46 at 3). First, Petitioners point out that "[t]here is no final default judgment against the Estate of Raymond Beard." (Id.). According to Petitioners, "the Estate of Mr. Beard still could theoretically appear and move to set aside the Clerk's default leaving the Petitioners open to multiple claims against a single fund." (Id. at 5).

Second, Petitioners state Claimant Wells was injured in the May Incident on the Vessel when he was on a dive excursion booked with and organized by a company called "Isla Divers, out of Casselberry, Florida, who also had personnel on the Vessel at the time of the alleged incident." (Id. at 2). According to Petitioners, if Claimant Wells is permitted to bring a state court action, "it will undoubtedly name Isla Divers as a Defendant." (Id. at 3). Petitioners argue "Isla Divers will inevitably assert cross-claims for indemnity and maritime contribution and the Claimant's proposed stipulation

9

does not protect Petitioners from any of those damages which could be in excess of the limitation fund." (Id. at 4).

Accordingly, Petitioners argue that "a multiple claimant situation could arise, for example, if the Claimant seek[s] to enforce a state court judgment against the ship owner up to the value of the limitation fund and then seeks to recover the remaining amount of the judgment against the ship owner's anticipated co-defendant [Isla Divers] in State Court." (Id.). Thus, Petitioners argue, "if the co-defendant [Isla Divers] does not sign protective stipulations with the admiralty court, they would not be foreclosed from recovering against the ship owner for contribution, even though Petitioners' liability has already been exhausted." (Id. at 4-5).

In reply, Claimant Wells argues that "Petitioners' concern regarding the limitation fund is unwarranted and secondary because they are not entitled to limitation as a matter of law, given their undisputed privity and knowledge of the negligent acts as owners of the subject vessel." (Doc. # 52 at 2).

### C. Entitlement to Limitation

The Court first addresses Claimant Wells's argument that Petitioners are not entitled to limitation as a matter of

law. For the reasons below, the Court finds that Claimant Wells's argument fails.

The Limitation of Liability Act limits a vessel owner's liability for any "loss, damage, or injury by collision . . . done, occasioned, or incurred, without the privity or knowledge of the owner." 46 U.S.C. § 30523(b). "'Privity or knowledge' refers to the vessel owner's personal participation in, or actual or constructive knowledge of, the specific acts of negligence or conditions of unseaworthiness which caused or contributed to the accident." In re Royal Caribbean Cruises, Ltd., 55 F. Supp. 2d 1367, 1371 (S.D. Fla. 1999), aff'd sub nom. Royal Caribbean Cruises v. Hommen, 214 F.3d 1356 (11th Cir. 2000).

Generally, in determining whether to limit a petitioner's liability, courts consider (1) whether there are any acts of negligence that caused the accident, and if so, (2) whether those acts of negligence were those associated with the shipowner's vessel, and, if so, (3) whether the shipowner had knowledge or privity of those same acts of negligence. Skanska USA Civ. Se. Inc. v. Bagelheads, Inc., 75 F.4th 1290, 1306 (11th Cir. 2023) (citations omitted) (noting that, while this procedure is "typical," it need not be applied rigidly).

11

That said, the Eleventh Circuit has made clear that a vessel owner cannot be awarded exoneration if it is "impossible under any set of circumstances for the vessel owner to demonstrate the absence of privity or knowledge." Id. (citing Suzuki of Orange Park, Inc. v. Shubert, 86 F.3d 1060, 1064 (11th Cir. 1996)). "The shipowner's privity or knowledge is not measured against every fact or act regarding the accident; rather, privity or knowledge is measured against the specific negligent acts or unseaworthy conditions that actually caused or contributed to the accident." Suzuki, 86 F.3d at 1064. "Although Suzuki articulated a summary judgment standard, the same basic principle logically applies at every stage of the proceedings." Skanska, 75 F.4th at 1306; see also Id. at n.9 ("The district court declined to apply Suzuki at summary judgment, holding that it was still possible *at that point in the litigation* for Skanska to show a lack of privity or knowledge." (emphasis added)). "So whenever the court finds that the vessel owner cannot establish a lack of privity or knowledge, it is appropriate to dismiss the petition to protect the claimants' rights under the saving to suitors clause — even if that means forgoing (in part or in entirety) a decision on the vessel owner's liability." Id.

12

Importantly, a claimant bears the initial burden of proving negligence or unseaworthiness. Hercules Carriers v. Claimant State of Fla., Dep't of Transp., 768 F.2d 1558, 1564 (11th Cir. 1985). Once the claimant meets this initial burden, "the burden of proof shifts to the shipowner to prove the lack of privity or knowledge." Id.

Here, at this stage of the litigation, the Court finds that (1) Claimant Wells has not met his burden of proving negligence or unseaworthiness, and (2) it is still possible for Petitioners to establish that they lacked privity and knowledge of the alleged negligent acts that allegedly gave rise to Claimant Wells's injuries in the May Incident.

As an initial matter, the record does not appear to support Claimant Wells's argument that Petitioners' "privity and knowledge of the negligent acts as owners of the subject vessel" is "undisputed." (Doc. # 52 at 2). The allegations and affirmative defenses asserted by Petitioners in their complaint (Doc. # 1) and in their answer to Claimant Wells's Rule F(5) claim (Doc. # 24) indicate that Petitioners could have been free from negligence and from privity or knowledge with any negligent act. Specifically, Petitioners alleged, among other things, that (1) the Vessel was operated and navigated with reasonable care, (2) the Vessel was seaworthy,

13

(3) Petitioners lacked privity or knowledge of the accident, (4) Claimant was comparatively at fault, (5) the incident was caused by other third parties or superseding causes, and (6) Claimant Wells's injuries were based upon pre-existing conditions. (Doc. ## 1 at 3; 24 at 2-3). Petitioners also deny most of the material factual allegations made by Claimant Wells in his Rule F(5) claim. (Doc. # 24 at 1-2).

Moreover, the record does not appear to support Claimant Wells's argument that "there is no genuine dispute that the Vessel owners, the Petitioners, at *all* times had 'actual knowledge of' *every* possible negligent act or omission which could have, and did, contribute to the accident." (Doc. # 52 at 4) (emphasis in original). Claimant Wells submitted an exhibit of a boating accident report by the Florida Fish and Wildlife Commission ("FWC"). (Doc. # 52-2). The FWC report indicates:

> ACCORDING TO VICTIM, INJURIES SUSTAINED WHILE ATTEMPTING TO GAIN ACCESS TO DIVE LADDER AFTER HANDING ONE FIN TO THE DECK HAND WHILE STILL IN THE WATER. THE VICTIM STATED THAT HE WAS THEN SUCKED INTO THE STARBOARD SIDE MOTOR FROM THE CURRENT. THE VICITM ALSO STATED THAT THE MOTORS WERE RUNNING BUT IN NEUTRAL BUT BELIEVES THAT THE PROPELLORS WERE STILL SPINNING FROM THE CURRENT.

(Id. at 2). The report shows some boat occupants stated, "the outboard engines had been turned off prior to attempting to

14

assist the last remaining diver into the vessel." (Id. at 3). The FWC report only notes "STANDING/SITTING ON TRANSOM" as the "accident contributor." (Id. at 4). No machinery or equipment failure is noted as to the Vessel. (Id. at 1).

On this record, there is a factual dispute as to the cause of Claimant Wells's injuries that allegedly occurred when his legs were struck by the Vessel's propeller. Petitioners plausibly allege that Claimant Wells's injuries resulted from other causes that were not within the privity or knowledge of Petitioners, including Claimant's comparative fault and other superseding causes. Further, the FWC report indicates that there are factual disputes as to whether the engine was turned off or in neutral, whether the propellor was spinning, and whether the spinning was due to the current or some other cause, such as the operator's negligence. In addition, the FWC report indicates there is a factual dispute as to whether Claimant Wells's injuries were caused by his own actions (e.g., sitting or standing on transom, or climbing the ladder after handing one diving fin while still in water) or the negligence of the boat operator. Thus, Claimant Wells has not satisfied his burden of establishing negligence or unseaworthiness, and it is not "impossible under any set of circumstances" for Petitioners to prove lack of privity with

15

or knowledge of any alleged negligent acts. See Skanska, 75 F.4th at 1306; Hercules Carriers, 768 F.2d at 1564.

Accordingly, Claimant Wells's argument that Petitioners are not entitled to limitation as a matter of law fails at this stage of the proceedings.

### D. **Modifying the Court's Injunction**

Finally, the Court turns to the crux of the Motion. Claimant Wells argues that his stipulations are sufficient under Beiswenger, such that the Court should permit him to pursue his claims in the forum of his choosing. (Doc. # 45 at 4). Petitioners argue that Claimant Wells's stipulations are not sufficient under Beiswenger because (1) the stipulations leave open the possibility that Petitioners may be liable for damages resulting from potential crossclaims for indemnity and maritime contribution that may be asserted by Isla Divers as a potential co-defendant, and (2) the Estate of Raymond Berard may move to set aside the Clerk's default. (Doc. # 46 at 4-5). In essence, Petitioners argue that Claimant Wells's stipulations leave open the possibility that a "multiple-claims-inadequate-fund" situation may arise.

The Eleventh Circuit has expressly held that "to determine whether a multiple-claims-inadequate-fund situation exists, potential claims for indemnity or

16

contribution from the vessel owner's co-defendants must be separately considered." Beiswenger, 86 F.3d at 1042; see also Id. ("In this case, therefore, we hold that *the possibility of claims* from BEC's state court co-defendants creates a multiple claims situation." (emphasis added)). Here, there is the possibility of crossclaims for indemnity and maritime contribution that may be asserted by Isla Divers against Petitioners in a state court case brought by Claimant Wells. Accordingly, the Court agrees with Petitioners that the instant case presents a multiple claims situation.

The Court now turns to whether Claimant Wells's stipulations cure the multiple claims situation. The Beiswenger court approved the following stipulation:

> 4. That the Respondent/Claimants will not seek to enforce any judgment rendered in any state court, whether against the Petitioner or another person or entity that would be entitled to seek indemnity or contribution from the Petitioner, by way of cross-claim or otherwise, that would expose the Petition [sic] to liability in excess of $40,090.00, until such time as this Court has adjudicated the Petitioner's right to limit that liability.

Id. at 1043 ("In our view, this stipulation cures the 'multiple claims' problem . . ..").

Analogous to the above, Claimant Wells stipulates:

17

e. If there is a judgment or arbitration award in any action outside this Court in excess of the Limitation Fund against Petitioners, Mr. WELLS will not seek enforcement of that judgment or award unless and until Petitioner's right to limitation is determined by this federal Court. If this Court grants Petitioner's limitation then Mr. WELLS will not seek enforcement of any judgment or arbitration award that would require Petitioner to pay damages in excess of the Limitation Fund;

(Doc. # 45 at 3).

Unlike Claimant Wells's stipulation, the stipulation approved in Beiswenger explicitly referenced judgments against persons or entities that would be entitled to seek indemnity or contribution from the petitioner by way of crossclaim. Moreover, unlike Claimant Wells's stipulation, the stipulation approved in Beiswenger explicitly promised not to enforce such judgments until the limitation action was adjudicated. The Eleventh Circuit's approval of the stipulation was specifically based on these points. See Beiswenger, 86 F.3d at 1043-44 ("Appellees have promised not to enforce any state court judgment . . . against *any* party, including BEC's co-defendants, until BEC's right to limitation is adjudicated in the admiralty court. By giving up such claims unless and until limitation is denied,

18

appellees have eliminated the [multiple claims problem].")
(emphasis in original).

In contrast, Claimant Wells's stipulation only promises
to not enforce "a judgment or arbitration award in any action
outside this Court . . . against Petitioners." It leaves open
the possibility that Claimant Wells may obtain a state court
judgment against Isla Divers and thereafter enforce that
judgment against Isla Divers. In turn, Isla Divers may be
entitled to a claim of indemnity or contribution against
Petitioners before this limitation action is adjudicated.
Accordingly, Claimant Wells's stipulation has not "eliminated
the possibility that competing claims will exhaust the
limitation fund before the admiralty court has the
opportunity to determine whether to grant limited liability"
to Petitioners. Id. For these reasons, the Court concludes
that Claimant Wells's stipulations have not converted this
case into the functional equivalent of a single claim case.
See Id. at 1044. Therefore, Claimant Wells's stipulations are
not sufficient under Beiswenger.

Even if Claimant Wells were to make Beiswenger
stipulations to protect against Isla Divers exhausting the
limitation fund, such stipulations would still not be
sufficient to convert this case into the functional

19

equivalent of a single claim case. That is because Tammy Berard, the personal representative of the Estate of Raymond Berard, might appear before this Court and assert a claim pertaining to the November Incident against Petitioners. Though the Clerk has already entered default against Ms. Berard, Supplemental Rule F(4) grants the Court discretion to allow the filing of a late claim in a limitation of liability proceeding "for cause shown." See, e.g., In re Hartwig, No. 6:06-cv-1232-GSK-GJK, 2007 WL 2209235, at *3-4 (M.D. Fla. July 30, 2007) (setting aside a default judgment in a limitation action and permitting the party to file a late claim outside the monition's deadline); Matter of Suntex Marina Inv'rs, LLC, No. 2:19-cv-80-SPC-MRM, 2020 WL 10355092, at *3-6 (M.D. Fla. Mar. 13, 2020) (same). Even if this Court had already entered final default judgment, Federal Rule of Civil Procedure 60 permits the Court to relieve a party from final default judgment for various reasons, including but not limited to mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, or any other reason that justifies relief. Accordingly, unless Ms. Berard were to enter appropriate Beiswenger stipulations, a multiple claims situation may still arise in this case.

Thus, modification of the Court's injunction (Doc. # 15) is not warranted at this time.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Respondent/Claimant Nicholas David Wells's "Motion for Order Modifying Injunction and Incorporated Stipulation" (Doc. # 45) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 10th day of February, 2026.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

21